IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RANDY HUDDLESTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-3009 |
| | ) | |
| PHILLIP D. POHLMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendant Phillip D. Pohlman's Motion for Summary Judgment and Memorandum in Support (d/e 12) (Motion for Summary Judgment). Plaintiff Randy Huddleston filed the pending Complaint (d/e 1) against Pohlman, a Sergeant with the Illinois State Police, after Pohlman arrested Huddleston for criminal trespass to Pohlman's real property. Huddleston brings his suit pursuant to 42 U.S.C. § 1983, asserting that the arrest violated his Constitutional rights. Pohlman moves for summary judgment. As set forth below, Pohlman's Motion is denied.

1

## BACKGROUND

Plaintiff was previously married to Nancy Huddleston (Nancy). They were divorced in 1994. Plaintiff and Nancy have one child, Rachyl Huddleston (Rachyl), who was born in 1991. Nancy has custody of Rachyl, and Plaintiff has visitation rights. Nancy owns a single family house located at #17 Briarwyck, Jacksonville, Illinois, with Defendant Pohlman. Pohlman resides in the house with Nancy and Rachyl.

On Friday, December 31, 2004, Plaintiff had a scheduled visitation with his daughter that was to begin at 6:30 p.m. on December 31st and to conclude at 8:00 a.m. on Saturday, January 1, 2005. Pursuant to the Huddleston's marital settlement agreement, Plaintiff is responsible for picking up his daughter for visitations. By letter dated September 2, 2003, Nancy informed Plaintiff that, from September 12, 2003, forward, Rachyl would be available at #17 Briarwyck "for visitation pick up and delivery." Plaintiff's Memorandum of Law in Opposition to Motion to Defendant's Motion for Summary Judgment (d/e 15) (Plaintiff's Memorandum), Ex. 2. After Pohlman and Nancy moved into #17 Briarwyck, Plaintiff would typically pick his daughter up there for scheduled visitations.

By letter dated November 19, 2004, Nancy informed Plaintiff that she

2

and Rachyl would be traveling to Nancy's parents' home in Texas from December 27, 2004, until December 31, 2004. <u>Plaintiff's Memorandum</u>, Ex. 3. The letter states that Nancy was enclosing a copy of the flight schedule and information for Plaintiff. On the return trip, Nancy and Rachyl were scheduled to fly from Texas to Memphis, Tennessee and then to St. Louis, Missouri. <u>Motion for Summary Judgment</u>, Ex. E, <u>Deposition of Phillip D. Pohlman (Pohlman Dep.)</u>, p. 20. Pohlman was to pick the pair up at the airport in St. Louis and transport them back to Jacksonville. According to the flight schedule, Nancy and Rachyl were supposed to arrive in St. Louis at approximately 3:30 p.m. <u>Motion for Summary Judgment</u>, Ex. A, <u>State of Illinois v. Huddleston, Morgan County, Illinois Case No. 05-CM-35, Transcript of Jury Trial held April 14, 2005 (Criminal Trial Transcript)</u>, p. 40.

    Around 3:00 p.m. on December 31, 2004, Pohlman was at the St. Louis airport waiting for Nancy and Rachyl when he received a cell phone call from Nancy. Nancy told Pohlman that they were delayed in Memphis and would not arrive in St. Louis until approximately 6:00 p.m. that day. Pohlman testified that, after hearing from Nancy, he attempted to contact Plaintiff by telephone, but was unable to reach Plaintiff or to leave a

3

message for him.  Pohlman Dep., p. 23-24.  Around 6:00 or 7:00 p.m., Pohlman received another call from Nancy informing him that she and Rachyl were delayed further.  Id. at 25.

At approximately 6:30 p.m. on December 31, 2004, Plaintiff arrived at #17 Briarwyck to pick up Rachyl for the scheduled visitation.  No one was present when he arrived at the residence.  After waiting approximately ten to fifteen minutes, Plaintiff began making phone calls.  He called Rachyl's cell phone, and there was no answer.  He called the residence, and again no one answered.  Plaintiff then called Nancy's cell phone.  Nancy answered and stated that she and Rachyl were in Memphis with a flight delay.  Nancy informed Plaintiff that they were expected to arrive in Jacksonville at approximately 9:30 or 10:00 p.m.  Plaintiff testified that, prior to the telephone conversation with Nancy, he had not received any indication that there would be a problem with the scheduled visit.  Criminal Trial Transcript, p. 41.  Plaintiff further asserts that, during the telephone conversation, Nancy did not request that the visitation be cancelled.  Id. at 41-42. Nancy maintains that Plaintiff became irate on the telephone and that she concluded the conversation by telling Plaintiff that she would call him when she got home.  She hung up on him.  Motion for Summary

4

Judgment, Ex. C, Deposition of Nancy Huddleston (Nancy Huddleston Dep.), p. 8-9. Plaintiff left #17 Briarwyck at this point.

Plaintiff returned to #17 Briarwyck at approximately 9:30 p.m. He pulled his vehicle into the driveway and sat in the car waiting for his daughter to return. Plaintiff maintains that he parked his car, a Chevy Blazer, to the right side of the driveway. Criminal Trial Transcript, p. 42-43. Plaintiff estimates that the driveway is approximately twenty-four feet wide. Id. at 42. He asserts that his car was taking up only approximately one-third of the width of the driveway. Id. at 43.

Plaintiff asserts that he waited in his car for approximately half an hour before Pohlman, Nancy, and Rachyl arrived home. Motion for Summary Judgment, Ex. B, Deposition of Randy Huddleston (Randy Huddleston Dep.), p. 11. Pohlman asserts that he, Nancy, and Rachyl arrived at #17 Briarwyck at approximately 10:30 or 11:00 p.m. Criminal Trial Transcript, p. 18. Pohlman maintains that as he turned his car onto Briarwyck he could see that someone was parked "in the middle of [his] driveway." Id. As he approached the house, Pohlman was able to see that it was Plaintiff who was parked in the driveway. Id. As they approached the house, Rachyl stated "that's my dad" or "that's my dad's car." Nancy

Huddleston Dep., p. 9; Pohlman Dep., p. 30-31.  Pohlman testified that Rachyl stated that she did not want to go with her father, but rather wanted to go to bed.  Pohlman Dep., p. 31.  Nancy testified that she was surprised to see Plaintiff at the house because it was late, and she had told Plaintiff she would call him when she arrived at home.  Nancy Huddleston Dep., p. 9.

   Pohlman and Nancy assert that when their vehicle approached the driveway, Pohlman activated the turn signal to let Plaintiff know that Pohlman wanted to pull into the driveway.  Pohlman thought that Plaintiff would see Pohlman's vehicle and back out of the driveway so Pohlman could pull into it.  Pohlman Dep., p. 32-33.  Pohlman testified that he was driving a large Lincoln Navigator and that there was no way that Pohlman could pull into the driveway unless Plaintiff pulled out.  Id. at 40-41.  When Plaintiff did not respond to the turn signal, Pohlman angled his car into the driveway and flipped the bright lights on and off.  Id.  Pohlman maintains that after doing this, he backed his car out of the driveway and parked it, a little to the east of the driveway.  Criminal Trial Transcript, p. 18-20.  Pohlman asserts that, at this point, his vehicle was not impeding Plaintiff from backing out of the driveway.  Id. at 20.

Plaintiff asserts that he observed Pohlman's vehicle pull up behind him, "[d]irectly kind of behind me at an angle but out in the street." Id., p. 43-44. Plaintiff testified that all he could see was the glare of headlights in his car's mirrors. Plaintiff maintains that he does not think that he could have safely backed his car up to pull out of the driveway without hitting Pohlman's vehicle. Id., p. 44. Plaintiff further maintains that Pohlman had room to pull his car into the driveway next to Plaintiff's Blazer. Id. at 43.

The parties' accounts of what transpired next diverge; however, in analyzing Defendant's Motion, the Court must view the evidence in the light most favorable to Plaintiff. Plaintiff asserts that, approximately five to ten seconds after Pohlman's vehicle arrived at #17 Briarwyck, Pohlman walked up to the driver's side of Plaintiff's car and asked Plaintiff what he was doing there. Randy Huddleston Dep., p. 12. Plaintiff responded that he was there to pick up Rachyl and that he would leave as soon as she got into the car. Id.; Criminal Trial Transcript, p. 44. Pohlman ordered Plaintiff to get off Pohlman's property. Randy Huddleston Dep., p. 12; Criminal Trial Transcript, p. 44-45. Plaintiff told Pohlman that he had a court order that allowed him to be there to pick up his daughter. Randy Huddleston Dep., p. 12. At this point, Pohlman turned and walked away

7

from Plaintiff's vehicle. Plaintiff concedes that he did not take any action to back his car out of the driveway after Pohlman ordered him to leave, explaining: "I thought I was being blocked in. I mean, from where I sat, it looked like I didn't have enough room." Randy Huddleston Dep., p. 14.

Pohlman testified that, when he left Plaintiff's vehicle, he walked back to the Lincoln Navigator, retrieved the keys to his squad car, walked to the squad car that was parked on the street in front of his house, retrieved a set of handcuffs from the squad car, and returned to Plaintiff's vehicle. Criminal Trial Transcript, p. 24. Plaintiff asserts that when Pohlman returned he stated: "you're not going to fuckin' manipulate me. I'm a mother fucking state cop, get out of the car, you're under arrest." Randy Huddleston Dep., p. 15; see also Criminal Trial Transcript, p. 47. Plaintiff exited his vehicle. Pohlman placed Plaintiff in handcuffs and patted him down for weapons. Plaintiff asserts that the time that elapsed from the point Pohlman's vehicle arrived at #17 Briarwyck until he was placed in handcuffs was approximately forty-five seconds. Criminal Trial Transcript, p. 45.

Pohlman telephoned the Jacksonville Police Department and asked for assistance. Officers arrived on scene approximately three to four minutes

8

after Pohlman placed the call. Pohlman Dep., p. 46. Lieutenant Leo Johnson arrived first, and then Patrol Officer Andy Coop. Id., p. 47-48. Pohlman informed Lieutenant Johnson what had occurred. Pohlman testified that he told Johnson that he "had placed Mr. Huddleston under arrest and asked him if he would transport him up to the PD." Id., p. 48. Pohlman testified that Johnson said "that would be fine." Id.

Officer Coop removed Pohlman's handcuffs from Plaintiff and replaced them with his own. Eventually, Coop transported Plaintiff to the Jacksonville Police Department. Pohlman testified that he asked Johnson whether he needed "to come down, make a report or sign a complaint. And he said no. He says, we will take the actions, we will take control of the incident." Id., p. 49. A tow service came and towed Plaintiff's car away from #17 Briarwyck. Pohlman asserts that, at that point, he returned to the Navigator and pulled it into the driveway. Pohlman estimated that approximately one half hour had passed from the time he had arrived at the residence until he pulled into the driveway. Id., p. 51. Pohlman testified that Nancy and Rachyl remained in the Navigator from the time the three of them arrived on the scene until Pohlman was able to pull the vehicle into the driveway. Id.

9

Plaintiff was charged in state court in Morgan County, Illinois, with criminal trespass to real property based on the December 31, 2004, incident. On April 14, 2005, Plaintiff was acquitted of the charge following a jury trial. Plaintiff filed the instant Complaint on January 11, 2006, alleging that Pohlman had violated his Constitutional rights by arresting him without probable cause. Pohlman moves for summary judgment.

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact and that judgment as a matter of law is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). When a properly supported motion for summary judgment has been made, the party opposing summary judgment may not merely rest on the pleadings but

must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "A party must present more than mere speculation or conjecture to defeat a summary judgment motion." Liu v. T & H Machine, Inc., 191 F.3d 790, 796 (7th Cir. 1999). The Court must consider the evidence in the light most favorable to the non-moving party, here Plaintiff, and draw all reasonable inferences in his favor. See Anderson, 477 U.S. at 255.

Pohlman asserts that summary judgment is appropriate because the undisputed facts show that probable cause existed for Plaintiff's arrest or, in the alternative, that Pohlman's actions are shielded by qualified immunity. The Court turns first to the issue of probable cause.

    A.    Probable Cause

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest . . . ." Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006). This is true even in cases in which a defendant allegedly acted upon a malicious motive. Id. Probable cause exists:

> when the facts and circumstances within [the police officers'] knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in

>believing that the suspect had committed an offense. The court evaluates probable cause not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer.

Id. (internal quotations and citation omitted).

Under 720 ILCS 5/21-3(a)(3), "Whoever . . . (3) remains upon the land of another, after receiving notice from the owner or occupant to depart; . . . commits a Class B misdemeanor." The statute provides that "[a] person has received notice from the owner or occupant . . . if he has been notified personally, either orally or in writing . . . ." 720 ILCS 5/21-3(b). While the criminal trespass statute does not expressly include a mental state requirement, Illinois courts have incorporated one into it pursuant to 720 ILCS 5/4-3(b). See People v. Yutt, 597 N.E.2d 208, 212 (Ill. App. 3rd Dist. 1992); People v. Grant, 427 N.E.2d 810, 814 (Ill. App. 1st Dist. 1981); see also Illinois Pattern Jury Instructions – Criminal 16.00.

It is undisputed that Plaintiff was on Pohlman's property and that Pohlman ordered him to depart. Pohlman submits that this is the end of the inquiry, arguing that Plaintiff could have backed his car into the street and either waited for his daughter or contacted police if his visitation rights were being violated. However, viewing the evidence in the light most

12

favorable to Plaintiff, multiple material factual disputes exist. Plaintiff testified that after Pohlman asked him what he was doing there and ordered him off the property, Plaintiff informed Pohlman that he was there to pick up his daughter for the court-ordered visitation. According to Plaintiff, Pohlman did not respond to Plaintiff's explanation, but rather walked away, back to the vehicle in which Rachyl was seated. At this point, Plaintiff was under the impression that Pohlman was going to get Rachyl so that Plaintiff could begin his scheduled visitation. Criminal Trial Transcript, p. 46. Therefore, a question of fact exists as to the existence of probable cause as it relates to the adequacy of the notice to depart.

Moreover, viewing the evidence in the light most favorable to Plaintiff, at the time Pohlman ordered Plaintiff off the property, Pohlman's vehicle was positioned directly behind Plaintiff's vehicle "at an angle but out in the street." Criminal Trial Transcript, p. 43-44. Plaintiff testified that in his opinion he could not have safely backed his car up to pull out of the driveway without hitting Pohlman's vehicle. Id. at 44. During his deposition, Plaintiff was asked the following question: "When Sergeant Pohlman said you need to get off of my property, did you take any action to back your car out of the driveway?" Randy Huddleston Dep., p. 14.

13

Plaintiff responded, "I thought I was being blocked in. I mean, from where I sat, it looked like I didn't have enough room." Id. This evidence is sufficient to create a question of fact as to whether Plaintiff could have complied with Pohlman's directive.

Pohlman asserts that Pohlman's perception of Plaintiff's ability to back safely out of the driveway is controlling. Pohlman has also produced an Affidavit from Jacksonville Police Officer Coop, which states "To the best of my recollection, it did not appear to me that the position of the vehicle in the street would have blocked the other vehicle from backing out of the driveway." Defendant's Reply Memorandum in Support of Motion for Summary Judgment (d/e 16), Ex. H, Affidavit of Andy Coop. The probable cause determination is based on the facts as they would have appeared to a reasonable person in Pohlman's position. Pohlman's subjective belief that Plaintiff could have backed out of the driveway must, therefore, be shown to be objectively reasonable. Given the evidence outlined above, a question of fact exists as to its reasonableness. Officer Coop's perception, while relevant to the inquiry, is not dispositive at this stage in the proceedings.

Finally, the Court notes Plaintiff's testimony that the time that elapsed from the point Pohlman's vehicle arrived at #17 Briarwyck until

14

Plaintiff was placed in handcuffs was approximately forty-five seconds. Criminal Trial Transcript, p. 45. Plaintiff further submits that approximately five to ten seconds passed from the time Pohlman's vehicle arrived at #17 Briarwyck until Pohlman walked up to the driver's side of Plaintiff's car and asked Plaintiff what he was doing there. Randy Huddleston Dep., p. 12. Viewing the evidence in the light most favorable to Plaintiff, the time elapsed between Pohlman's order to leave and the arrest was approximately forty seconds, at most. Pohlman asserts that this amount of time is sufficient because a reasonable officer in Pohlman's position could have concluded based on Plaintiff's actions that Plaintiff was refusing to leave the property. In Yutt, the Illinois Appellate Court upheld the defendants' criminal trespass convictions when defendants, after receiving three orders to leave a property, failed to do so. Yutt, 597 N.E.2d at 212. The Yutt Court noted that: "Defendants were given ample time to vacate after having been ordered to leave but they showed no signs of complying." Id. Plaintiff concedes that he responded to Pohlman's order to vacate by stating that he had a court order that allowed him to be there to pick up his daughter. Plaintiff also admits that he made no efforts to back his car out of the driveway after Pohlman directed him to leave.

Randy Huddleston Dep., p. 14. However, given the small window of time, together with the questions relating to the adequacy of the notice to leave and Plaintiff's ability to comply, the Court finds that questions of fact exist on this material issue as well. The record contains evidence such that a reasonable jury could find that Pohlman lacked probable cause to arrest Plaintiff. Pohlman's request for summary judgment on this ground is denied, and the Court turns to the question of qualified immunity.

B.   Qualified Immunity

Qualified immunity protects officers performing discretionary functions from civil liability as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would know about. Saucier v. Katz, 533 U.S. 194, 201 (2001). In order to overcome this defense, Plaintiff must show that his rights were violated and that the law concerning the asserted right was clearly established at the time the challenged conduct occurred. Id. In analyzing whether the right at issue was clearly established, the Court must determine whether a reasonably competent official would know that the conduct was unlawful in the situation he confronted. Id. at 202.

Plaintiff has the clearly established right to be free from arrest in the

absence of probable cause. Thus, the Court must determine whether a reasonable officer could believe that probable cause to arrest Plaintiff existed given the situation that Pohlman encountered. Material issues of fact preclude the Court from deciding this issue on summary judgment. Questions of fact exist as to the adequacy of the notice to vacate, Plaintiff's ability to comply, and the sufficiency of the time that elapsed between the notice and Plaintiff's arrest. Viewing the evidence in the light most favorable to Plaintiff, a reasonably competent officer would have concluded that probable cause was lacking if Plaintiff was not given adequate notice or opportunity to leave or if Pohlman's vehicle was blocking Plaintiff from exiting the driveway. There is no doubt that the rule requiring probable cause for an arrest was clearly established at the time of this incident. Therefore, Pohlman is not entitled to summary judgment on qualified immunity grounds.

THEREFORE, Defendant's Motion for Summary Judgment and Memorandum in Support (d/e 12) is DENIED.

IT IS THEREFORE SO ORDERED.

ENTER: January 10, 2007.

    FOR THE COURT:

                                            s/ Jeanne E. Scott
                                            JEANNE E. SCOTT
                                 UNITED STATES DISTRICT JUDGE